United States Court of Appeals

FOR THE EIGHTH CIRCUIT

_____

No. 96-2477MN

_____

Minnesota Department of          *
Economic Security, State         *
Services for the Blind and       *
Visually Handicapped;            *
                                 *
          Plaintiff-Appellee,    *
                                 *
Dennis Groshel,                  *
                                 *
          Intervenor Plaintiff-  *    Appeal from the United States
          Appellee,              *    District Court for the District
                                 *    of Minnesota.
     v.                          *
                                 *
Richard Riley, United States     *
Secretary of Education;          *
United States Department of      *
Veterans Affairs; James B.       *
Donahoe, in his official         *
capacity as Director, Veterans   *
Canteen Service,                 *
                                 *
          Defendants-Appellants. *

_____

Submitted:  October 23, 1996

Filed:  February 26, 1997

_____

Before FAGG, BOWMAN, and HANSEN, Circuit Judges.

_____

FAGG, Circuit Judge.


     The Randolph-Sheppard Vending Stand Act, 20 U.S.C. §§ 107-107f
(1994) (the Act), gives blind persons licensed by a state licensing
agency priority to operate vending facilities on federal property.
This dispute began more than ten years ago, when Minnesota's
licensing agency, the Minnesota Department of Economic Security
(formerly the Minnesota Department of Jobs and Training)

(Minnesota), applied under the Act and its corresponding regulations for a vending permit for the Veterans Affairs Medical Center in St. Cloud, Minnesota (VA Medical Center). Minnesota's application was rejected by the Department of Veterans Affairs and the Veterans' Canteen Service (collectively VCS), which claimed to be exempt from the Act. Minnesota sought arbitration, as the Act provides. See 20 U.S.C. § 107d-1(b). The arbitration panel (the Panel) held the VCS was subject to the Act. The VCS and Minnesota then jointly submitted five disputed issues for the Panel to resolve. Only two are relevant to this appeal. The Panel decided Minnesota's licensed blind vendor Dennis Groshel should pay the VCS a commission on vending sales, and the VCS does not have the "right to install and operate its own vending machines" at the VA Medical Center.

Minnesota sought judicial review in the district court, which decided commission payments violate the Act. The VCS appealed to this court, and we affirmed. See Minnesota Dep't of Jobs & Training v. Riley, 18 F.3d 606, 608 (8th Cir. 1994). We held the Act applies to the VCS. See id. at 608-09. We also held that commission payments, like any limitation on a blind vendor's operation, are unlawful unless approved by the Secretary of Education. See id. at 609; 20 U.S.C. § 107(b). Although Riley paved the way for Minnesota to receive its vending permit, the VCS continued and continues to stonewall Minnesota and its blind licensee. Ignoring the Act, the Panel's decision, and our opinion in Riley, the VCS offered Minnesota a permit, but only if Minnesota agrees the VCS can install competing vending machines at the VA Medical Center. Minnesota returned to the district court, which granted Minnesota's motion to enforce the Panel's decision. In doing so, the district court recognized that "installation of vending machines by the VCS is undoubtedly an attempt to limit the income of the blind vendor[] which must be approved [by] the Secretary of the [Department of Education] prior to implementation." Although the district court characterized its enforcement order as a preliminary injunction, we agree with the

VCS that, for the purpose of review, we should treat the order as a permanent injunction because Minnesota and the VCS disagree only about the law, and nothing remains for the district court to resolve. Likewise, we agree with the VCS that we review the disputed questions of law de novo. See International Ass'n of Machinists & Aerospace Workers, Dist. Lodge No. 19 v. Soo Line R.R. Co., 850 F.2d 368, 374 (8th Cir. 1988) (en banc). On appeal, the VCS once again claims exemption from the Act. Our earlier opinion in Riley forecloses this claim.

Echoing its argument in Riley, the VCS contends it need not comply with § 107(b), which prohibits any limitation on a blind vendor's operation unless approved by the Secretary of Education, because the Veterans' Canteen Service Act independently authorizes the VCS to operate vending machines at the VA Medical Center. See 38 U.S.C. § 7802. Further, the VCS asserts that when it operates within the parameters of § 7802, neither an arbitration panel convened under 20 U.S.C. § 107d-1(b) nor the district court can hold the VCS answerable for violations of the Act. In Riley, however, we held the VCS must comply with every provision of the Act, and that includes §§ 107(b) and 107d-1(b). See 18 F.3d at 608-09. We have never questioned the VCS's authority to operate canteens, install vending machines, or do anything else the VCS's enabling legislation empowers it to do. But in Riley, we held the Act precludes the VCS's exercise of its statutory authority when that exercise would limit a blind vendor's operation, unless the Secretary approves the limitation. See id. at 609-10. Here, the VCS does not challenge the district court's finding that "competing vending machines will . . . undermine or . . . destroy [the] blind vendor's ability to obtain what is already a small income." No less than commission payments, competing machines would limit the blind vendor's operation. Riley rules out both, unless the Secretary decides otherwise.

In truth, the VCS has done far more than merely limit the

blind vendor's operation at the VA Medical Center. Congress assumed federal agencies would respect a blind person's vending enterprise and willingly comply with the Act. See 20 U.S.C. § 107d-2(b)(2). Instead, the VCS has tried to drive the blind vendor out of its domain. Testifying before the Panel in 1988, a VCS official said:

> Basically as long as this dispute lasts the guy who is going to suffer over it is going to be [the blind vendor] because prices are going to continue to go up, and we are going to continue to hold until this is resolved. The longer it goes on the less money he is going to make.

Nine years later, the VCS is still at it, demanding the right to install machines that would, as the district court found, destroy the blind vendor's livelihood. It is time for the VCS's scorched-earth campaign to end. Although Minnesota, in securing a permit, must work within the Act's regulatory scheme, Riley makes clear--and we hold today--that unless the VCS gets the Secretary's approval, the VCS may not insist Minnesota accept the presence of VCS vending machines at the VA Medical Center as the price of Minnesota's permit.

Finally, the VCS raises two other issues. First, the VCS contends arbitration panels convened under § 107d-1(b) have no authority to order remedies for violations of the Act. See Maryland State Dep't of Educ. v. United States Dep't of Veterans Affairs, 98 F.3d 165, 169-71 (4th Cir. 1996); Georgia Dep't of Human Resources v. Nash, 915 F.2d 1482, 1491-92 (11th Cir. 1990). The VCS's argument is misplaced. The Panel never ordered the VCS to take any remedial action, but simply decided competing VCS vending machines at the VA Medical Center would violate the Act. The Panel did exactly what the statute authorizes. See 20 U.S.C. § 107d-2(b)(2); Maryland State Dep't of Educ., 98 F.3d at 169-71; Nash, 915 F.2d at 1491-92. Indeed, by insisting on a permit condition at odds with the Panel's decision, it is the VCS that ignores its statutory responsibility to bring itself into

-4-

compliance with the Act.  See <u>Maryland State Dep't of Educ.</u>, 98 F.3d at 171.  Second, the VCS questions whether the Panel's no-VCS-machines decision continues in force because the Panel's reasoning interweaves that decision with its overturned ruling on commission payments.  If the two decisions were as mutually dependent as the VCS now claims, it is surprising the VCS did not say so when the commissions issue was before us in <u>Riley</u>.  Nevertheless, the argument is without merit.  The VCS itself, together with Minnesota, asked the Panel to resolve two separate disputed issues, commission payments and competing machines.  In deciding against the VCS's vending machines, the Panel took into consideration that the VCS would receive commissions.  The Panel never said, however, that if Minnesota pays no commissions, the VCS may then go ahead and install its machines.  Rather, the Panel said yes to commissions and no to competing VCS vending machines.  The Panel's decision was the final word on what the VCS must do to comply with the Act.  See § 107d-1(b).

The VCS is no different from any other steward of federal property.  If the VCS wants to impose limitations on a blind vendor's operation, it must get permission from the Secretary of Education.  Of course, if the Secretary approves installation of the VCS's vending machines, the VCS need not share its income with the blind vendor.  See § 107d-3(d).  We affirm the decision of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-5-